UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY ZAPPIN,

               Plaintiff,

               v.

DAVID EVAN SCHORR, MATTHEW F.
COOPER, *and* KEVIN M. DOYLE,

               Defendants.

**OPINION & ORDER**

22-cv-2034 (ER)

Ramos, D.J.:

    Anthony Zappin, a disbarred attorney proceeding *pro se*, brought this action against New York State officials and David E. Schorr, an attorney in private practice who previously represented Zappin during portions of his divorce proceedings. *See* Doc. 2 ¶¶ 9, 25. The instant action is just one of at least sixteen suits that Zappin has filed—in state and federal court—against Justice Cooper, a retired State Supreme Court justice who presided over his divorce proceedings, New York State officials, and others arising out of his divorce, disbarment, and subsequent criminal prosecution.[1] *See generally Zappin v. Cooper*, No. 20 Civ. 2667 (ER), 2022 WL 985634, at *1–7 (S.D.N.Y. Mar. 31, 2022).

    Before the Court are motions to dismiss filed by Justice Cooper, Doyle, and Schorr, in addition to a motion to seal filed by Schorr. Docs. 54, 58, 67, 71. For the reasons set for below, the Court GRANTS Justice Cooper and Doyle's motion to dismiss, GRANTS Schorr's motion to seal, and dismisses the remaining count against Schorr, Count III, for failure to state a claim.

---

[1] The amended complaint asserts six claims: (1) a racketeering enterprise claim against Justice Cooper, Doyle (together, "the state defendants"), and Schorr, in violation of the federal civil RICO statute; (2) a racketeering conspiracy claim against the state defendants and Schorr, in violation of the federal civil RICO statute; (3) a state law fraud claim against Schorr; (4) a state law claim alleging tortious interference with parental rights against Doyle and Schorr; (5) a state law claim of abuse of process against the state defendants; and (6) an abuse of process claim under 42 U.S.C. § 1983 against the state defendants. Doc. 61.

## I.      BACKGROUND

### A.  Factual Background

The facts underlying this action are discussed in detail in the Court's March 31, 2022, Opinion and Order in a related case filed by Zappin, No. 20 Civ. 2669 ("Federal Action 7").  *See Zappin v. Cooper*, No. 20 Civ. 2669, 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022).  They are largely reproduced here for context in light of the pending motions.  However, as another court recently noted in adjudicating one of Zappin's many cases, "[w]hile relevant litigation by Plaintiff is summarized below, it would be inordinately burdensome on the Court to provide a full accounting of Mr. Zappin's repetitious filings concerning his ex-wife, child, disbarments, divorce, custody proceedings, and [corresponding] media coverage[.]"  *Zappin v. Ramey*, No. 22 Civ. 0080 (RCC), 2023 WL 1469995, at *1 (S.D.W. Va. Feb. 2, 2023).

#### i.  The Divorce Action

Zappin, a former attorney and member of the bars of New York, West Virginia, and the District of Columbia, filed for divorce from his former spouse, Claire K. Comfort, and for custody of their child, in 2014.  The proceedings were acrimonious and covered extensively by New York City tabloids.  Schorr represented Zappin during a portion of the proceedings.  Doc. 61 ¶¶ 16–36.

Justice Cooper presided over substantial portions of Zappin's divorce action in Supreme Court, New York County.  In that action, Justice Cooper imposed a $10,000 sanction on Zappin for a "maelstrom of misconduct."  *See Zappin v. Comfort*, 26 N.Y.S.3d 217, 2015 WL 5511519, at *5 (N.Y. Sup. Ct. 2015), *aff'd*, 49 N.Y.S.3d 6 (N.Y. App. Div. 2017).  Among other reasons, the court sanctioned Zappin for attempting to subpoena documents from the case file maintained by the attorney for his child, and for filing a baseless complaint with the Office of Professional Medical Conduct against a psychiatrist retained as an expert.  *Id.* at *8–9.  In the court's sanctions decision, Justice Cooper held that Zappin's actions were a part of his ongoing efforts "to undermine the legal process and use his law license as a tool to threaten, bully, and intimidate," and that this behavior "call[ed] into question his fitness to practice law."  *Id.* at *1.

The Appellate Division, First Department, affirmed Justice Cooper's sanctions decision as "entirely proper" and "amply supported by the record," and it rejected Zappin's claim that he was denied a full and fair opportunity to oppose the sanction. *Zappin*, 49 N.Y.S.3d at 7.

Justice Cooper subsequently presided over the child custody trial in Zappin's divorce action. On February 29, 2016, he issued a decision resolving the custody dispute. The custody decision was incorporated into a final judgment of divorce, which awarded Comfort sole custody of the child, granted Zappin supervised visitation, granted a five-year stay-away order of protection in Comfort's favor, and required Zappin to pay child support. *See Zappin v. Comfort*, 65 N.Y.S.3d 30 (N.Y. App. Div. 2017) (affirming custody decision), *appeal dismissed*, 102 N.E.3d 1056 (N.Y. 2018). On appeal, the custody decision was affirmed in all respects. *Id.*

With Comfort's claim for attorneys' fees the only remaining issue in the divorce action, Justice Cooper recused himself, noting that in the interim, Zappin had filed three federal lawsuits against him; filed two complaints against him with the New York State Commission on Judicial Conduct, both of which were dismissed as being without merit; and created at least two websites aimed at "smearing [him]." Federal Action 7, Doc. 70 at 3 (internal citations omitted). Justice Cooper also noted Zappin's "venomous conduct" in sending a "disturbing" email to Justice Cooper's son and posting a fake online review of a course taught by his son, which stated in part that the instructor's "father is corrupt New York mobster Judge Matthew Cooper." *Id.* (internal citations omitted).

### ii.  Zappin's Disbarment

Based on Justice Cooper's findings, the Attorney Grievance Committee ("AGC") of the Appellate Division, First Department, charged Zappin with professional misconduct. The charges were approved by Ernest J. Collazo, an attorney in private practice who served as volunteer chairman of the AGC, and were prosecuted by staff attorney Kevin M. Doyle under the supervision of chief attorney Jorge Dopico. On October 17, 2016, the First Department found that Zappin had violated New York Rules of Professional Conduct §§ 3.1, 3.3(a)(1), 3.3(a)(3), 3.3(f)(2), 8.4(c), 8.4(d), and 8.4(h). *See Matter of Zappin*, 73 N.Y.S.3d 182, 186 (N.Y. App. Div.

2018) (citing 22 NYCRR 1240.8 [b] [2]).  The court based its findings of misconduct on Justice

Cooper's determinations that Zappin:

> had repeatedly perpetrated acts of domestic violence against his wife; had testified
> falsely at a custody trial; had knowingly introduced falsified evidence during the
> proceedings in the form of altered text messages; had presented misleading
> testimony through his expert witnesses; had . . . engaged in acts that repeatedly
> demonstrated disrespect for the court and counsel, by, *inter alia*, flouting the
> judicial directives of three judges . . ., setting up a fake website about the attorney
> for the child by registering her name as a domain name and posting derogatory
> messages about her on it, and baselessly filing a disciplinary complaint against a
> court-appointed psychiatric expert witness.  Additionally, the Supreme Court
> found that [Plaintiff] had sent text messages to his wife, an attorney, threatening
> her with loss of her license to practice law and professional ruin; had made
> grossly offensive remarks during cell phone conversations with his then three-
> month-old son in which he baselessly accused his father-in-law of being a child
> sexual abuser who could harm the child; had engaged in frivolous and abusive
> litigation against his wife, her parents, and her attorneys; and had attempted to
> publicly defame the attorney for the child.

*Id.* at 183–84.

The First Department referred the disciplinary matter to a referee to recommend an

appropriate sanction.  *Id.* at 187.  After a hearing, the referee recommended disbarment, citing

Zappin's "lack of remorse and evident lack of respect for the judicial process [as] serious

aggravating factors."  *Id.* at 184–8.  On March 8, 2019, the First Department ordered Zappin

disbarred "to protect the public, maintain the honor and integrity of the profession, or deter

others from committing similar misconduct[.]"  *Id.* at 188.  That decision held that disbarment

was amply justified because Zappin had had a full and fair opportunity to litigate the findings

made in the custody trial.  *Id.*  Based on Zappin's disbarment in New York, he was also disbarred

the District of Columbia in 2019, and in West Virginia in 2021.  *See* Federal Action 7, Doc. 69-2.

### iii.  The November 2, 2016 Incident

In a related case, Zappin alleged that on November 2, 2016, while he was walking in

lower Manhattan, he passed Justice Cooper, who purportedly approached Zappin and spat on him

("the November 2 incident").  Federal Action 7, Doc. 33 ¶ 14.  That day, Zappin filed a police

report at the New York Police Department's First Precinct.  *Id.* ¶ 17.  Zappin alleges he "never

once requested that the NYPD or the District Attorney's Office prosecute [Justice] Cooper," but instead simply wanted to "document what happened."  *Id.* ¶ 18.  At the time of the alleged incident, Justice Cooper was still presiding over the divorce action and was considering several post-judgment motions.  Federal Action 7, Doc. 70 at 15; Doc. 33 ¶¶ 26-27.

After an investigation of the November 2 incident by Lauren Liebhauser, investigator of the Manhattan District Attorney's Office, Zappin was arrested on March 28, 2017, and arraigned on March 29, 2017, in New York Criminal Court on a charge of falsely reporting an incident in the third degree in violation of N.Y. Penal Law § 240.50.3(a), a Class A misdemeanor.[2]  *See Zappin v. Cooper*, No. 20 Civ. 2669, Docs. 43-10, 43-11.  On September 19, 2017, Zappin pleaded guilty to one count of disorderly conduct under N.Y. Penal Law § 240.20(1), a violation, in satisfaction of the charge.  *See* Federal Action 7, Doc. 43-13.

### iv.  Zappin's Lawsuits

Zappin has filed at least nine federal actions arising out of the divorce action and its consequences, including his disbarment and the November 2 incident.[3]  First, on July 27, 2016, Zappin filed suit against Justice Cooper, seeking to hold him liable for transmitting a judicial opinion in the divorce action that allegedly contained false, malicious, or defamatory statements about him to purportedly unauthorized recipients.  *See Zappin v. Cooper*, No. 16 Civ. 5985 (KPF) ("Federal Action 1"), Doc. 1.  Zappin asserted a number of claims including defamation, intentional infliction of emotional distress, and tortious interference with prospective economic advantage.  *See id*.  On November 8, 2016—six days after the November 2 incident—Zappin amended his complaint to allege that Justice Cooper spat on him on the street, and cited the

---

[2] According to the criminal complaint, a review of video footage revealed that while Justice Cooper and Zappin did pass by each other, they did so "without any encounter or interaction of any kind."  Federal Action 7, Doc. 43-9 at 1–2.

[3] In addition to the federal actions, Zappin has also filed five actions arising out of the same events in the New York Supreme Court, one in the New York State Court of Claims, and one in West Virginia state court.  Zappin named Justice Cooper as a defendant in four of the five matters he filed in New York State Supreme Court.

November 2 incident in support of his claim alleging intentional infliction of emotional distress. *See* Federal Action 1, Doc. 26 ("First Amended Complaint" or "FAC").

On February 2, 2018, Judge Failla dismissed Zappin's FAC with prejudice, finding his claims barred by collateral estoppel.  *See* Federal Action 1, Doc. 57.  Zappin then moved for reconsideration and also wrote that he intended to file a motion to request that Judge Failla recuse from the matter.  Federal Action 1, Docs. 59, 63.  Zappin never filed his motion for recusal, and Judge Failla denied his motion for reconsideration.  Federal Action 1, Doc. 67. Several months after Judge Failla denied Zappin's motion, he wrote that he intended to file a motion requesting document discovery from Judge Failla to "determine the extent of [her] conflict of interest" and seek her disqualification.  Federal Action 1, Doc. 71 at 1.  Judge Failla declined to produce any documents, writing there is "no basis for discovery from this Court[.]" Federal Action 1, Doc. 72 at 4.

Next, Zappin filed two federal actions relating to allegedly defamatory statements made in articles reporting on his divorce proceedings, both of which were assigned to Judge Failla as related to his earlier-filed federal suit:  *Zappin v. Daily News, L.P.*, No. 16 Civ. 8762 (KPF) ("Federal Action 2") and *Zappin v. NYP Holdings, Inc.*, No. 16 Civ. 8838 (KPF) ("Federal Action 3").  He filed Federal Action 2 on November 10, 2016, against Daily News LP and Justice Cooper.  And he filed Federal Action 3 on November 14, 2016, against NYP Holdings Inc., reporter Julia Marsh, and Justice Cooper.  Zappin voluntarily dismissed both actions against Justice Cooper.  *See* Federal Action 2, Doc. 21; Federal Action 3, Doc. 21.

On August 9, 2017, Judge Failla dismissed Federal Action 2, finding the article at issue was a "fair and true report" of the divorce proceedings and related judicial documents and was not defamatory.  *See* Federal Action 2, Doc. 32 at 21.  And on March 26, 2018, Judge Failla dismissed Federal Action 3 for the same reason.  *See* Federal Action 3, Doc. 46 at 15, 21–22.  In Federal Action 3, Zappin again requested document discovery from Judge Failla, *see* Doc. 52, and she again declined to produce any documents.  *See* Federal Action 3, Doc. 53.

On November 14, 2017, Zappin brought another federal action, and amended his complaint shortly thereafter, on November 20, 2017. *See Zappin v. Doyle*, No. 17 Civ. 8837 (KPF) ("Federal Action 4"), Docs. 1, 28. Broadly speaking, his 375-page complaint alleged constitutional violations and common-law tort claims stemming from his divorce proceedings and related criminal and disciplinary matters. *See id.* Zappin named as defendants Collazo and Doyle—volunteer chairman and prosecutor, respectively, of the AGC; New York State Justices Deborah Kaplan, Ronaldo Acosta, and Peter Moulton; Justice Lawrence Marks, Chief Administrative Judge for the Office of Court Administration in the New York Unified Court System; Robert Tembeckjian, Administrator and Counsel of the New York Commission on Judicial Conduct; Justice Cooper; Liebhauser; and Manhattan District Attorney Cyrus Vance. *See id.* Zappin voluntarily dismissed Justice Cooper, Liebhauser, and Vance on April 6, 2018. Federal Action 4, Doc. 93.

In November and December 2017, Zappin filed a number of letters and motions in Federal Action 4 seeking a temporary restraining order, *see* Docs. 37, 51, and preliminary injunction, *see* Docs. 29–31, to halt the attorney disciplinary proceeding against him in state court. Judge Failla denied these applications. *See* Federal Action 4, Docs. 49, 54, 81.

On April 10, 2018, Judge Failla dismissed Federal Action 4 with prejudice as a sanction for Zappin's "persistent disregard of [the Court's] orders." *Zappin v. Doyle*, No. 17 Civ. 8837 (KPF), 2018 WL 2376502, at *5 (S.D.N.Y. Apr. 10, 2018), *aff'd*, 756 F. App'x 110 (2d Cir. 2019). Specifically, Judge Failla found Zappin repeatedly ignored Court-imposed deadlines and flouted multiple Court orders "over a period of months and with abiding disdain for the Court and its orders." *Id.* at *6–8. Judge Failla noted "the Court has no reason to believe that [Zappin] will ever view this Court's' orders and deadlines as binding on him." *Id.* at *6. As such and because neither a monetary sanction nor professional discipline would deter Zappin's conduct, Judge Failla found:

> [T]he Court does not believe that it can afford Plaintiff his right to be heard on the merits without doing considerable violence to the Court's right to have its orders followed and to the State Defendants' rights to know the claims brought against

> them and to mount a fully-informed defense. To control the cases that come
> before it, the Court is given broad discretion to issue orders and, when those are
> disobeyed, to impose sanctions. Having no ability to ensure compliance with the
> former going forward, the Court now resorts to the latter. To be clear, it does not
> do so lightly. The Court has admonished Plaintiff about the importance of abiding
> by its orders; it has given Plaintiff several "second chances"; and it has tried
> without success to construct an alternative to this dismissal. On the record before
> it, the Court is confident that giving further opportunities to Plaintiff to abide by
> its orders will be met only with Plaintiff's continued misconduct. This case is
> dismissed.

*Id.* at *9.

On April 26, 2019, and November 14, 2019, Zappin filed two more federal actions in this District, which were assigned to Judge Schofield: *Zappin v. Collazo*, No. 19 Civ. 3781 (LGS) ("Federal Action 5") and *Zappin v. Dopico*, No. 19 Civ. 10573 (LGS) ("Federal Action 6"). He brought these related actions against Collazo and Dopico, the chief attorney of the AGC. Judge Schofield dismissed both cases in a single opinion on September 22, 2020. *See* Federal Action 5, Doc. 61; Federal Action 6, Doc. 37. Judge Schofield found Zappin's case against Collazo was barred by *res judicata*, and dismissed Zappin's case against Dopico on standing and *res judicata* grounds as well as for failure to state a claim. As Judge Schofield wrote, Zappin "successively violated Court Orders," including by missing a number of Court-imposed deadlines, and "cost both Defendants and the Court needless time[.]" Federal Action 5, Doc. 58; Federal Action 6, Doc. 29. Judge Schofield concluded that Zappin's conduct "has been dilatory and disrespectful of Court Orders and the parties' time." *Id.* She advised that any further failure to comply would result in sanctions. *Id.*

Zappin filed yet another action on March 31, 2020, which was assigned to the undersigned. *See* Federal Action 7. In that case, Zappin asserted four claims under 42 U.S.C. § 1983: (1) abuse of process, (2) conspiracy to abuse process, (3) retaliation for Zappin's criticism of Justice Cooper, in violation of his First Amendment rights, and (4) conspiracy to retaliate. *See* Federal Action 7, Doc. 33. The Court denied Zappin's motion to further amend the complaint and issued an injunction barring Zappin from filing, without leave of court, any new actions in the Southern District of New York, against any New York State entity or agency, or any other current or former New York state judge, official, or employee arising out the

divorce proceedings and related litigation. *Zappin v. Cooper*, No. 20 Civ. 2669 (ER), 2022 WL 985634, at *1–7 (S.D.N.Y. Mar. 31, 2022). The Court subsequently denied Zappin's motions to reconsider that decision and for the recusal of the undersigned. *Zappin v. Cooper*, No. 20 Civ. 2669 (ER), 2023 WL 1783727, at *1–11 (S.D.N.Y. Feb. 6, 2023).

In February and March 2022, Zappin filed two more federal suits—despite asserting in his opposition to Justice Cooper's motion that he had no intention of filing any new lawsuits. *See* Federal Action 7, Doc. 83 at 22–23. On February 16, 2022, Zappin brought suit against Doyle, Dopico, and others in the Southern District of West Virginia, challenging his disbarment in West Virginia. *See Zappin v. Ramey*, S.D. W. Va., No. 3:22 Civ. 00080 (RCC) (CAE) ("Federal Action 8").[4]

And on March 11, 2022, Zappin brought the instant suit ("Federal Action 9") in this Court against Justice Cooper, Doyle, and David Evan Schorr, who represented Zappin in part of his divorce proceedings. Doc. 1; Doc. 2. He brought claims of racketeering, fraud, tortious interference with parental rights, and abuse of process. Doc. 2 ¶¶ 70–118. Specifically, Zappin alleges that Schorr sought to undermine Zappin's position and defenses throughout the divorce proceedings in an attempt to harm and defraud him and that all defendants participated in a scheme to engineer Zappin's criminal prosecution and disbarment. *See id.* ¶¶ 9–118; *see also* Doc. 61. The actions underlying the scheme allegedly took place between 2015 and 2016. *See, e.g.*, Doc. 61 ¶ 49 ("Defendant Cooper issued a September 18, 2015 decision sanctioning Plaintiff in *Zappin v. Comfort*. [ . . . ] The sanction came before Plaintiff could even open his mouth in [Justice] Cooper's courtroom having only been assigned the case in late July of 2015."); *id.* ¶ 57 (alleging that in 2015, Doyle "opened and later abandoned (after admitting Plaintiff engaged in no misconduct) an attorney disciplinary investigation against Plaintiff based on [Justice] Cooper's 2015 Sanction Decision"); *id.* ¶ 58 (alleging that Doyle filed a collateral

---

[4] In that action, the court recently granted the defendants' motions to dismiss that action with prejudice and issued a filing injunction. *See Ramey*, 2023 WL 1469995, at *1.

estoppel disciplinary action against Zappin in 2016, "despite knowing" that there was no evidence in the record to support the action).

### B. Procedural History

Zappin initially filed the complaint in this case, Federal Action 9, on March 11, 2022. Doc. 1.  Due to deficiencies in the docket entry, the complaint was properly before the Court on March 15, 2022.  Doc. 2.  Zappin subsequently filed a motion requesting the recusal of the undersigned on April 21, 2022, following the Court's adjudication of various pending motions in Federal Action 7.  Doc. 13; *See Zappin v. Cooper*, No. 20 Civ. 2669, 2022 WL 985634 (S.D.N.Y. Mar. 31, 2022).

On April 20, 2022, the Court also received a letter from the state defendants requesting the dismissal of the action, Doc. 12, and the Court set a briefing schedule, Doc. 15.  It instructed defendants to file their motion by May 13, 2022, directed Zappin to respond by June 3, 2022, and further set a reply deadline for June 10, 2023.  *Id.*  However, on May 5, 2022, the state defendants filed a letter requesting that the Court defer any motion practice on the action due to Zappin's failure to serve the complaint.  Doc. 16.  The Court granted the request and adjourned the briefing schedule until the state defendants were properly served.  Doc. 17.

On June 10, 2022, the state defendants once again wrote to the Court regarding service. Doc. 18.  They indicated that Zappin's time to serve process expired on June 9, 2022, pursuant to Federal Rule of Civil Procedure 4(m), and Zappin had failed to timely do, nor had he sought an extension of time to do so.  *Id.*  Accordingly, the state defendants asked the Court to dismiss the action pursuant to Rule 4(m).  *Id.*  That same day, Zappin filed three affidavits of service, one as to Schorr,[5] one as to Justice Cooper, and one as to Doyle.  *See* Docs. 19–21.  The affidavit

---

[5] The affidavit regarding the service of Schorr states that a process server left a copy of the complaint with a John Doe at Schorr's apartment building on May 13, 2022, and it further provides that the complaint was also mailed to Schorr's address on May 14, 2022.  Doc. 20.  In a separate declaration filed by Schorr, his doorman stated that he received the case documents on May 13, 2022, the same day indicated in the affidavit of service.  *See* Szleszynski Decl., Doc. 56 ¶¶ 1–5; Doc. 20.  Zappin filed an additional affidavit of service as to Schorr on July 1, 2022.  Doc. 48.  The affidavit indicates that the summons and complaint were once given to Schorr's doorman on June 16, 2022, and were also mailed to Schorr's address on June 17, 2022.  *Id.*

regarding the service of Justice Cooper indicated that service was unsuccessful because Justice Cooper had moved.  Doc. 21.  However, Zappin filed another proof of service affidavit on June 13, 2022, indicating that Justice Cooper had been personally served on June 10, 2022.  Doc. 29. The same day, Zappin filed a motion for extension of time to serve Justice Cooper, therein requesting that the Court deem Justice Cooper served as of June 10, 2022.  Doc. 30.

Also on June 10, 2022, Zappin filed a proposed clerk's certificate of default as to Schorr and Doyle.  Doc. 22; *see also* Doc. 24.  The Clerk of Court entered the certificate on June 13, 2023.  Doc. 28.  The next day, Zappin filed a proposed clerk's certificate of default as to Justice Cooper, which was entered on June 14, 2022.  Docs. 33, 34, 35.  The defendants thereafter filed letter motions requesting that the Court set aside the defaults.  Docs. 36, 37; *see also* Doc. 23[6] (asking the Court to direct the Clerk of Court not to sign the proposed certificate of default).

The Court then held a status conference to resolve the parties' pending requests on July 1, 2022.  Doc. 38; Min. Entry dated July 1, 2022.  At the conference, the Court vacated the certificates of default and granted the defendants' requests for leave to file their motions to dismiss.  Min. Entry dated July 1, 2022.  The Court also granted Schorr's request to file a motion to seal the Financial Decision After trial from his own divorce action, *Schorr v. Schorr*, which Zappin filed publicly on the docket of this action on June 13, 2022.  *Id.*; Doc. 26-1.  The Court ordered the defendants to file their moving papers by July 22, 2022, directed Zappin to respond by August 12, 2022, and further directed defendants to submit any reply by August 17, 2022. Min. Entry dated July 1, 2022.

---

[6] In response to Schorr's letter requesting that the Court direct the Clerk of Court not to sign the proposed certificate of default, Zappin filed a document from Schorr's matrimonial action, namely, a copy of the Financial Decision After Trial.  *See* Doc. 26-1 (containing the *Schorr v. Schorr* Financial Decision as an exhibit in support of Zappin's arguments about Schorr's alleged dishonesty and "unethical schemes").  Schorr requested that the Court seal the document.  Doc. 27.  Per the Court's direction, Zappin filed a response in opposition to the request on June 30, 2022, which indicated, among other things, Zappin's position that there was no basis for sealing the document.  Doc. 43.

The defendants timely filed their motions, Docs. 54, 58.  However, on August 11, 2022, the day before the opposition was due, Zappin filed an amended complaint.[7]  Doc. 61. Accordingly, the defendants re-submitted their motions, Docs. 67, 71.[8]  Zappin filed his responses in opposition on October 28 and 29, 2022.  Docs. 78, 79.  Schorr replied on November 1, 2022, Doc. 83, and the state defendants replied on November 30, 2022, Doc. 89.[9]

On February 7, 2023, Zappin filed a notice of voluntary dismissal as to defendants Berg and Letitia A. James.  Doc. 94.

Thereafter on February 8, 2023, the Court denied Zappin's motion to disqualify the undersigned.  Doc. 97.  The same day, Zappin renewed his motion and moved to compel the disclosure of the undersigned's alleged communications with the Southern District Grievance Committee regarding Zappin.  Docs. 98, 99.  On February 10, 2023, the Court denied the motion, noted that the undersigned did not refer Zappin to the Grievance Committee, clarified that there has been no effort to retaliate against Zappin, and reiterated that there was no basis for recusal. Doc. 100.

## II.   LEGAL STANDARD

### A. Dismissal Pursuant to Rule 12(b)(6)

Under Rule 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

---

[7] The amended complaint added Assistant Attorney General Michael A. Berg, Justice Cooper's counsel, and New York Attorney General Letitia A. James as defendants.  Doc. 61.

[8] In the memorandum of law in support of his renewed motion, Schorr indicated that because the motion to seal was fully briefed in the original memorandum of law in support of his first motion to dismiss, Doc. 55, the renewed memorandum only addressed his dismissal arguments pursuant to Federal Rule of Civil Procedure 12(b)(5).  Doc. 68 at 2.

[9] Days before the state defendants filed their reply, Zappin filed an omnibus supplemental "declaration in opposition" on November 17, 2022.  Doc. 86.  The declaration included 965 pages of exhibits.  *Id.*; *see also* Doc. 87.

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When determining whether that standard has been met, the Court may consider the complaint itself, as well as all documents attached thereto or incorporated therein. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *Foros Advisors LLC*, 333 F. Supp. 3d 354, 357 (S.D.N.Y. 2018). A document is incorporated when it is referenced in the complaint or when its terms and effects are relied upon heavily such that it may be considered "integral" to the pleadings. *Chambers*, 282 F.3d at 152–53 (citation omitted); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804 (2d Cir. 2019); *Beauvoir v. Israel*, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (quoting *Roth*, 489 F.3d at 509) ("It is well established that '[d]ocuments that are attached to the complaint or incorporated into it by reference are deemed part of the pleading and may be considered.'").

To survive a Rule 12(b)(6) motion, the plaintiff must allege sufficient facts to show more than a "mere possibility" that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 557. This "flexible 'plausibility standard'" is not a heightened pleading standard, *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 n.3 (2d Cir. 2007) (internal quotation marks and citation omitted), and "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555. The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (internal quotation marks and citations omitted).

Accordingly, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the

plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable...."). However, to the extent that the exhibits attached to the complaint credibly contradict the allegations attached within the complaint itself, the Court may conclude that the allegations are not, in fact, plausible.  *Beauvoir*, 794 F.3d at 248 (concluding that a "threadbare recital" in the complaint was contradicted by the attached exhibit, and Plaintiffs thus failed to plausibly allege their claim).

While *pro se* litigants' submissions "are held 'to less stringent standards than formal pleadings drafted by lawyers,'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), as a former attorney, Zappin is not entitled to the special solicitude usually granted to *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no such solicitude at all.").

### B. Dismissal Pursuant to Rule 12(b)(5)

In considering a motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process, a court may also look to materials outside the complaint to determine whether it has jurisdiction.  *Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citation omitted).  "Conclusory statements that a defendant was properly served are insufficient to overcome a defendant's sworn affidavit that he was never served with process."  *Id.* (quotation marks and citation omitted).  When a defendant challenges the sufficiency of service pursuant to Rule 12(b)(5), "the plaintiff bears the burden of proving its adequacy."  *Id.* (quotation marks and citation omitted).

To evaluate a 12(b)(5) motion, courts look to Federal Rule of Civil Procedure 4, which governs service of process.  Pursuant to Federal Rule 4(m):

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

14

Fed. R. Civ. P. 4(m). The Second Circuit has held that Federal Rule of Civil Procedure 4 is to be construed liberally "to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice." *Romandette v. Weetabix Co., Inc.*, 807 F.2d 309, 311 (2d Cir. 1986) (internal quotation marks and citation omitted). Incomplete or improper service may lead a court to dismiss an action "unless it appears that proper service may still be obtained." *Id.* (internal quotation marks and citation omitted). Thus, a court may dismiss an action when it appears that "there is simply no reasonably conceivable means of acquiring jurisdiction over the person of the defendant." *Id.* (quoting *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959)).

### C. Sealing

"Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution." *Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020); *see also Collado v. City of New* York, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). However, "[a]lthough the public's right is strong, it is 'not absolute.'" *Mirlis*, 952 F.3d at 59 (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

Courts engage in a three-step inquiry to determine whether the presumptive right to public access attaches to a particular document. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). First, a court will determine whether the document is a "judicial document." *Id.* at 119. "A judicial document is one that has been placed before the court by the parties and that is 'relevant to the performance of the judicial function and useful in the judicial process.'" *Mirlis*, 952 F.3d at 59 (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). Second, the court must "determine the weight of the presumption of access" to the particular document. *United States v. Erie Cty.*, 763 F.3d 235, 239 (2d Cir. 2014). Generally, the presumptive right of access is given "strong weight." *Mirlis*, 952 F.3d at 59; *see also United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal

courts."). Third, the court will balance the weight accorded to the presumption of access against "all of the factors that legitimately counsel against disclosure of the judicial document." *Mirlis*, 952 F.3d at 59 (citing *Amodeo*, 71 F.3d at 1050). "Countervailing factors" the court may consider include "(i) the danger of impairing law enforcement or judicial efficiency and (ii) the privacy interests of those resisting disclosure." *Amodeo*, 71 F.3d at 1050; *see also Lugosch*, 435 F.3d at 120 (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)) ("Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.").

## III.   DISCUSSION

Justice Cooper and Doyle move for dismissal with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Doc. 60; Doc. 72.  Schorr moves to dismiss Zappin's claims under Federal Rule of Civil Procedure 12(b)(5) for insufficient service and to seal the Financial Decision from his matrimonial action.  *See* Doc. 55; Doc. 68.  The action is dismissed in its entirety, and the motion to seal is granted, for the reasons set forth below.

### A.  State Defendants' Motion

The parties agree that this case revolves around an alleged scheme to "issue and disseminate false claims of misconduct against [Zappin], resulting in adverse judicial rulings and his disbarment."  Doc. 72 at 10; *see also* Doc. 79 at 1.  However, as the state defendants note, various courts "have rejected Plaintiff's contentions that the adverse findings and allegations against him were false, and the Southern District [] ha[s] deemed those rulings final and binding."  Doc. 72 at 10–11.

The state defendants move to dismiss Zappin's allegations for the following reasons:  (1) the RICO Act claims are time-barred, and the doctrines of absolute and qualified immunity bar Zappin's claims in their entirety as to Doyle, and in part as to Justice Cooper; and (2) the amended complaint fails to state any viable claim.  Doc. 72 at 11 ("Among their many defects, the RICO claims fail to allege the existence of the requisite pattern of racketeering activity or enterprise, or that State Defendants sought to obtain money or property from

16

Plaintiff. . . .  Plaintiff's claim for tortious interference with parental rights does not exist under New York law, . . ., and his 42 U.S.C. § 1983 claim alleging abuse of civil process does not exist under federal law . . . .  Finally, the Amended Complaint fails to state a plausible claim for malicious abuse of process under state law.")

The Court grants the state defendants' motion to dismiss the allegations set forth against them with prejudice.

### i.  Federal Civil RICO Claims

Zappin's civil RICO claims are barred by the applicable statute of limitations and are thus dismissed.  As the state defendants point out, the statute of limitations for civil RICO claims is four years, and the statute begins to run when the plaintiff discovers, or should have discovered, the alleged injury.  *Rotella v. Wood*, 528 U.S. 549, 552 (2000) (noting that *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987) "established a 4-year limitations period for civil RICO claims"); *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (noting that the statute of limitations begins to run when a plaintiff discovered or should have discovered the alleged injury).

In this case, the actions underlying Zappin's RICO allegations took place more than four years before he filed the instant suit on March 11, 2022.  Indeed, the amended complaint states that Zappin knew that the defendants were engaging in the alleged misconduct in 2015 and 2016. Doc. 61 ¶¶ 49, 57, 58.  Accordingly, Counts I and II fall outside the limitations period and are dismissed as untimely as to all of the defendants.[10]

---

[10] The Court notes that Counts I and II are also properly dismissed for failure to state a claim.  Among other things, Zappin failed to sufficiently allege any racketeering activity.  Indeed, as the state defendants note, Zappin's wire fraud and mail fraud allegations—which serve as the predicate racketeering activity for the RICO allegations—fail to allege that they sought to obtain any money or property through the alleged actions.  *See generally* Doc. 61; *see also* 18 U.S.C. § 1343; 18 U.S.C. § 1341.  That Zappin had a property right in his law license does not affect the Court's analysis here because, as the state defendants note, allegations that a defendant sough to harm a legal practice by making purported false statements do not plead a scheme with the *object* of obtaining money or property. *Compare* Doc. 79 at 10 (arguing that Zappin had an interest in his law license that virtually every jurisdiction recognizes) *with* Doc. 89 at 13–14 (noting that even if Zappin had such a property interest, "his pleading regarding that purported interest relies on allegations that State Defendants made false statements about his conduct that resulted in his disbarment"); *see also Hollander v. Pressreader, Inc.*, No. 19 Civ. 2130, 2020 WL 2836189, at *4 (S.D.N.Y. May 30, 2020) (holding that facts showing that an intent to harm a law practice by making false

While Rule 15 indicates that courts "should freely give leave" to amend a pleading, that direction is limited to situations where "justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007); *see also Gayle v. Larko*, No. 18 Civ. 3773 (ER), 2019 WL 4450551, at *4 (S.D.N.Y. Sept. 17, 2019).  Importantly, leave is unwarranted where "the problem with . . . [the] claims is 'substantive' and, thus, 'better pleading will not cure it.'"  *Larko*, 2019 WL 4450551, at * 4 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

As described in detail above, Zappin's litigation tactics evince a desire to harass and intimidate his adversaries and unduly burden the judicial system, rather than an honest attempt to litigate genuine allegations.  Additionally, the deficiencies in his pleadings cannot be cured as his claims are time-barred, and any amendment would thus be futile here.  Accordingly, the Court dismisses Counts I and II, as to all defendants, with prejudice.

### ii.  Tortious Interference With Parental Rights Claim

Zappin's claim for tortious interference with parental rights is also dismissed with prejudice.  *See* Doc. 61 ¶¶ 113–119.  As the state defendants note, there is no state law claim for tortious interference with parental rights.  Doc. 72 at 29.

Zappin nevertheless insists that his claim should go forward because New York *does* recognize a tort for interference with *custodial rights*.  Doc. 79 at 16.  In opposing the state defendants' dismissal motion, he conflates his non-existent cause of action with *custody rights* cases.  *Id.*  However, as the state defendants emphasize, "each case [Zappin] cites concerns interference with child *custody*, which Plaintiff does not allege, and not merely 'parental rights.'"  Doc. 89 at 15 (citation omitted); *see, e.g.*, *Lisker v. City of New York*, 72 Misc. 2d 85, 88 (Sup. Ct. 1972) ("Plaintiff has alleged a set of facts indicating a wrongful interference with *custodial*

---

statements do not plead a scheme with the object of money or property).  Indeed, as in *Hollander*, "these allegations amount to little more than an 'attempt to spin an alleged scheme to harm a plaintiff's professional reputation into a RICO claim.'"  *Id.* at *4 (quoting *Kimm v. Lee*, No. 04 Civ. 5724 (HB), 2005 WL 89386, at *4 (S.D.N.Y. Jan 13, 2005), *aff'd sub nom. Kimm. v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006)).

*relations* and the resultant serious mental injury to the mother of the wrongfully detained child.")
(emphasis added); *McEntee v. New York Foundling Hosp.*, 21 Misc. 2d 903, 905 (Sup. Ct. 1959)
(denying motion to dismiss for interference with *custodial rights* where the Welfare Department
temporarily placed a child at a hospital and restricted visitation).

The Court thus dismisses Zappin's tortious interference allegation as to both defendants.
And since "better pleading will not cure" the deficiencies here, the claim is dismissed with
prejudice. *Larko*, 2019 WL 4450551, at *4.

### iii.  Abuse of Process

In Counts IV and V, Zappin alleges that Justice Cooper and Doyle "employed regularly
issued civil process to seek an unconstitutional and abusive filing injunction" in this Court, in
Federal Action 7.  Doc. 61 ¶ 122; 130.  Count IV sets out a violation of state law, *id.* ¶ 121, and
Count V sets out a federal violation pursuant to 42 U.S.C. § 1983, *id.* ¶ 128.

In New York, "a malicious abuse-of-process claim lies against a defendant who (1)
employs regularly issued legal process to compel performance or forbearance of some act (2)
with intent to do harm without excuse of justification, and (3) in order to obtain a collateral
objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d
Cir. 1994).  Malicious abuse of criminal process also supports liability under § 1983, *id.*;
however, § 1983 liability may not be predicated on a claim of malicious abuse of *civil* process,
*Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).

Neither one of Zappin's abuse of process claims can survive the state defendants' motion
to dismiss.  Zappin failed to show that the defendants sought a filing injunction "with intent to do
harm without excuse of justification" in order to obtain an illegitimate objective.  *Sheldon*, 41
F.3d at 80.  To the contrary, the record is awash with evidence showing that the request for a
filing injunction in Federal Action 7 was justified and indeed necessary.  Additionally, § 1983 is
*per se* unavailable here because Zappin alleges abuse of *civil* process.  *Mattingly*, 585 F.3d at
104.  Accordingly, Counts IV and V are dismissed.

Because leave to amend would be futile, both claims are dismissed with prejudice. *Larko*, 2019 WL 4450551, at *4.

### B.  Schorr's Motions

#### i.    Motion to Dismiss

Schorr also moves to dismiss the action on the basis that he was insufficiently served, without prejudice to any argument for failure to state a claim.  Doc. 68 at 3 n.1; Fed. R. Civ. P. 12(b)(5).  While the Court declines to grant the motion pursuant to Rule 12(b)(5), the Court nevertheless concludes that Zappin failed to state a plausible claim against Schorr and dismisses the remaining claim against him with prejudice.  *See* Fed. R. Civ. P. 12(b)(6).[11]

The Court briefly recounts the relevant history regarding service.  The complaint was filed on March 11, 2022, Doc. 1, and Zappin had 90 days therefrom to effect proper service, until June 9, 2022, Fed. R. Civ. P. 4(m).  As of June 9, no affidavit of service had been filed.  It was not until the state defendants filed a letter regarding the expiration of time to serve process that Zappin filed various affidavits of service, including the affidavit regarding service of Schorr.  Doc. 18; *see also* Docs. 19–21.  That affidavit indicates that a process server allegedly left a copy of the complaint with a John Doe at Schorr's apartment building on May 13, 2022, and it further indicates that the complaint was also mailed to Schorr's address.  Doc. 20.  The record also shows that Schorr was re-served on June 16, 2022.  Doc. 48.

While Schorr challenges various factual circumstances surrounding service, he concedes that his doorman received the case documents on May 13, 2022, the same day indicated in the affidavit of service.  *See* Szleszynski Decl., Doc. 56 ¶¶ 1–5; Doc. 20.  Additionally, the affidavit of service states that the documents were also mailed on May 14, 2022.  Doc. 20.  And the record shows that the documents were again delivered to Schorr's residence on June 16, 2022.  Doc. 48.

Importantly, as Schorr recognizes, New York law permits valid service by (1) leaving a copy of the summons and complaint with a doorman at a defendant's residence and (2) mailing

---

[11] The Court notes that, given the conclusions set forth above, the only remaining claim against Schorr is Count III, Zappin's state law fraud claim.  *See* Doc. 61 ¶¶ 106–112.

summons and the complaint to the defendant.  *Weingeist v. Tropix Media & Ent.*, No. 20 Civ. 275 (ER), 2022 WL 970589, at *8 (S.D.N.Y. Mar. 30, 2022).  Given these circumstances, the Court cannot dismiss the action against Schorr on the basis that "there is simply no reasonably conceivable means of acquiring jurisdiction over the person of the defendant." *Romandette*, 807 F.2d 309 at 311 (indicating that Rule 4 should be construed liberally to find personal jurisdiction in cases where parties have received actual notice) (quoting *Stanga v. McCormick Shipping Corp.*, 268 F.2d 544, 554 (5th Cir. 1959)).

However, the Court concludes that the remaining claim against Schorr, Count III, can and must be dismissed pursuant to Rule 12(b)(6).  The Second Circuit has recognized that a district court has the "ability *sua sponte* to dismiss a complaint" if the allegations "lack[ ] a basis in law or fact." *Muka v. Murphy*, 358 F. App'x 239, 241 (2d Cir. 2009); *see also Chodkowski v. Cnty. of Nassau*, No. 16 Civ. 5770, 2017 WL 10637956, at *13 (E.D.N.Y. Nov. 30, 2017) ("The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for failure to state a claim upon which relief may be granted if the complaint lacks an arguable basis either in law or fact.") (internal quotations and citation omitted).  "As a practical matter, the vast majority of *sua sponte* dismissals are for frivolous claims, or, at least, where there is no substantial question as to whether the plaintiff can prevail.  *Choi v. 37 Parsons Realty LLC*, No. 19 Civ. 3875 (BMC), 2022 WL 17103507, at *4 (E.D.N.Y. Nov. 22, 2022).  Where a plaintiff asserts "fantastic or delusional claims," such a *sua sponte* dismissal is proper.  *Tyler v. Carter*, 151 F.R.D. 537, 540 (S.D.N.Y. 1993).[12]

---

[12] *See also id.* ("Among the factual claims subject to § 1915(d) dismissal as frivolous 'are claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.'  [ . . . ]  The claims of plaintiff at bar may be so characterized.  The question is whether such claims asserted by a fee-paying plaintiff are subject to *sua sponte* dismissal by a district court under Rule 12(b)(6).  I hold that they are.  A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense.  The policies arguing against *sua sponte* Rule 12(b)(6) dismissals do not apply in these circumstances.  The author of claims as irrational as these cannot be regarded as subject to the economic incentive to refrain from frivolous actions imposed by filing fees and court costs upon rational paying litigants.  Similarly, a *sua sponte* dismissal of a complaint such as this cannot reasonably said to deprive such a plaintiff of the opportunity of 'clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.'") (quoting *Neitzke v. Williams*, 490 U.S. 319, 329–330 (1989)).

In this case, Count III alleges that Schorr "made numerous material representations before and during the course of his 'representation' of Plaintiff in the *Zappin v. Comfort* custody proceedings," Doc. 61 ¶ 107, adding that he did so in "collusion with opposing counsel and Defendant Doyle," *id.* ¶ 109.  However, those allegations are belied by the record in this case, as well as the extensive records in Zappin's numerous other federal and state cases.[13]  Time and time again, courts have reaffirmed the validity and soundness of the outcome of Zappin's divorce and custody action, his disciplinary proceedings, and his subsequent disbarment.  Yet Zappin seeks to relitigate the same issues through the creation of imaginative but implausible schemes regarding the purported collusion of various actors that were a part of his divorce and custody disputes.[14]  *See generally* Doc. 61.

That ends here.  Zappin's claims, including his fraud claim against Schorr, are frivolous. There is no substantial question as to whether Zappin can prevail:  he simply cannot.  *Choi*, 2022 WL 17103507, at *4; *Murphy*, 358 F. App'x at 241.  Accordingly, the remaining fraud claim against Schorr is also dismissed with prejudice.  *Larko*, 2019 WL 4450551, at *4.

---

[13] Zappin's fraud allegations against Schorr are also time-barred.  Under New York law, "[a]n action alleging fraud must be commenced within 'the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it' (CPLR 213 [8])." *Carbon Cap. Mgmt., LLC v. Am. Exp. Co.*, 88 A.D.3d 933, 939, 932 N.Y.S.2d 488 (2011).  Here, Zappin's fraud allegations stem from actions that took place in 2015, during Schorr's representation of Zappin.  *See* Doc. 61 ¶¶ 21–35, 107.  The complaint makes clear that Zappin was aware of the purported fraudulent acts at the time.  *Id.* ¶ 28, 33, 34, 35 ("Plaintiff eventually fired Schorr near the end of the *Zappin v. Comfort* child custody trial after it became apparent that he was working in tandem with [opposing counsel and other alleged co-conspirators].").  Accordingly, Zappin's fraud claim is also untimely given that the six-year limitations period expired in 2021, and the case was filed in March 2022.

[14] Zappin's opposition supports the contention that he seeks to move forward with his fantastical claims not because they carry any merit, but because doing so is his "only avenue to obtain the documents, communications and materials" he imagines exist and would like to obtain to validate his version of the divorce, disbarment, and corresponding proceedings described above.  Doc. 79 at 17 ("These documents, communications and other materials will prove that Defendants falsified court orders, manufactured evidence and engaged in other misconduct and criminal acts in order to bring a baseless collateral estoppel disciplinary case against Plaintiff in retaliation for Plaintiff exercising his First Amendment right to criticize and sue New York State officials. . . .  Plaintiff has been denied basic discovery in all nine (9) cases he has filed in this Court against New York State defendants.").  That is not a proper use of the judicial system's resources.

> ii.    **Motion to Seal**

The Court next addresses Schorr's motion to seal. Doc. 55 at 2–4. Schorr argues that the Financial Decision in his matrimonial action, *Schorr v. Schorr*, which Zappin attached to one of his pleadings, should be sealed; however, he emphasizes that he *does not* move to prevent Zappin from accessing the Financial Decision for use altogether, only to bar the public from accessing the document on this docket. *Id.* at 2.

In support of his arguments, Schorr relies on Section 235(1) of the New York Domestic Relations Law, which reads as follows:

> An officer of the court with whom the proceedings in a matrimonial action or a written agreement of separation or an action or proceeding for custody, visitation or maintenance of a child are filed, or before whom the testimony is taken, or his clerk, either before or after the termination of the suit, shall not permit a copy of any of the pleadings, affidavits, findings of fact, conclusions of law, judgment of dissolution, written agreement of separation or memorandum thereof, or testimony, or any examination or perusal thereof, to be taken by any other person than a party, or the attorney or counsel of a party, except by order of the court.

N.Y. Dom. Rel. Law § 235(1). Additionally, under Section 202.5(e)(1) of the Uniform Civil Rules for the Supreme Court, parties must omit or redact "confidential personal information in papers submitted to the court for filing," including "any of the documents or testimony in a matrimonial action." Schorr also points out that "generally, the issues relating to DRL 235 (1) in secondary actions usually concern attempts to prevent disclosure to (and use by) third parties of matrimonial documents altogether – rather than the sealing of those documents from public view." Doc. 55 at 3. In other words, Schorr argues that his sealing arguments are strong given that his motion does not seek to prevent Zappin from accessing and using the Financial Decision.

According to Zappin, DRL § 235 does not provide protection when a litigant publishes a document from a matrimonial file, does not cover written decisions after trial, and there is no legal basis for the Court to seal the Financial Decision. Doc. 43 at 1–6.

The Court grants Schorr's motion and declines to unseal the Financial Decision stemming from Schorr's matrimonial action. The factors counseling against disclosure of the document

weigh more heavily than the presumption of public access here.  Indeed, in this case, the privacy interests of Schorr and his family are strong.  *Amodeo*, 71 F.3d at 1050; *see also Lugosch*, 435 F.3d at 120.  Those interests are codified and protected within DRL § 235 and New York Court Rule 202.5(e)(1), and Zappin has not shown that sealing bears a consequence that outweighs those privacy interests here.  *See generally* Doc. 43.

Accordingly, the motion to seal the Financial Decision is granted.

## IV.    CONCLUSION

For the reasons set forth above, the state defendants' motion to dismiss is GRANTED, Schorr's motion to seal the Financial Decision stemming from his matrimonial action is GRANTED, and the remaining claim against Schorr, Count III, is dismissed for failure to state a claim.

Zappin is reminded that he is enjoined from filing, without leave of Court, any new actions in the Southern District of New York against Justice Cooper, the State of New York, any New York State entity or agency, or any other current or former New York State judge, official, or employee arising out of his divorce proceedings, disciplinary proceedings, encounter with Justice Cooper, or his corresponding arrest and prosecution.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 54, 58, 67, 71, and to close the case.

It is SO ORDERED.

Dated:    March 22, 2023

        New York, New York

_____

                Edgardo Ramos, U.S.D.J.